UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

OFFICE CREATE CORPORATION,

                         Plaintiff,

          v.

1st PLAYABLE PRODUCTIONS, LLC,

and

EMILIE T. ("TOBI") SAULNIER,

                         Defendants.

Case No. 1:23-cv-00091 (TJM/DJS)

---

### <u>MEMORANDUM OF LAW IN SUPPORT OF</u><br><u>PLAINTIFF'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

MARC R. LABGOLD, P.C.
Marc R. Labgold, Ph.D.
Patrick J. Hoeffner
Megan C. Labgold
*Attorneys for Plaintiff Office Create Corp.*
1900 Reston Metro Plaza
Suite 600
Reston, VA 20190

TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................................1

II.   FACTUAL BACKGROUND ..................................................................................................2

III.  LEGAL STANDARD.............................................................................................................8

IV.   ARGUMENT...........................................................................................................................9

      A.    OC's Valid and Rights Were Directly Infringed .......................................................9

      B.    Defendants Are Contributorily Liable for the Trademark Infringement ..................9

            1.    Defendants Supplied Products and Services to a Direct Infringer.............11

            2.    Defendants Continued to Supply Its Products and Services to Planet,
                  Whom They Knew or Had Reason to Know was Engaging in Trademark
                  Infringement.................................................................................................12

            3.    Defendants Are Contributorily Liable for Planet's Infringement..............18

      C.    Defendant Saulnier's Personal Liability ................................................................19

V.    CONCLUSION.....................................................................................................................20

TABLE OF AUTHORITIES

**Cases**

*A M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ............................................. 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 8

*Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167 (N.D.N.Y. 2011) ................. 9, 18

*Car-Freshner Corp. v. Meta Platforms, Inc.*, 5:22-CV-1305 (MAD/ML) (N.D.N.Y. Nov.
    7, 2023) .................................................................................................................................. 14

*Coach, Inc. v. Farmers Mkt. & Auction*, 881 F. Supp. 2d 695 (D. Md. 2012) ............................ 17

*Coach, Inc. v. Goodfellow*, 717 F.3d 498 (6th Cir. 2013) ....................................................... 10, 13

*Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007) .................................................................................. 16

*Dish Network L.L.C. v. Siddiqi*, Case No. 18-CV-4397 (VB) (S.D.N.Y. Nov. 6, 2019)........ 12, 18

*Display Producers, Inc. v. Shulton, Inc.*, 525 F. Supp. 631 (S.D.N.Y. 1980) ........................ 10, 12

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996)........................................ 9, 19

*Gallo v. Prudential Residential Servs.*, 22 F.3d 1219 (2d Cir.1994) ............................................. 8

*Gilliam v. Am. Broad. Companies, Inc.*, 538 F.2d 14 (2d Cir. 1976) .......................................... 16

*Goodman v. Albany Transp., Inc.*, 103 F. Supp. 2d 112 (N.D.N.Y. 2000).................................... 8

*Grant Airmass Corp. v. Gaymar Industries*, 645 F. Supp. 1507 (S.D.N.Y. 1986)................. 16, 18

*Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D.N.Y. 2010)............... 10

*Innovation Ventures, LLC v. Ultimate One Distributing Corp.*, 176 F.Supp.3d 137 (2016)........ 19

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982)............................. 9, 18

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions*, 658 F.3d 936, 947 (9th Cir. 2011)............... 19

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098 (N.D. Cal.
    2008) ...................................................................................................................................... 10

*Mayes v. Summit Entm't* Corp., 287 F. Supp. 3d 200 (E.D.N.Y. 2018)....................................... 19

*Omega SA v. 375 Canal, LLC*,  984 F.3d 244 (2d Cir. 2021)....................................................... 14

*Pinder v. S. DiCarlo, Inc*., Case No. 1:18-cv-00296 (BKS/ATB) 2020 WL 437000 (Jan. 28, 2020 N.D.N.Y)............................................................................................................ 19

*Power Test Petroleum Distribs., Inc. v. Manhattan & Queens Fuel Corp,* 556 F. Supp. 392 (E.D.N.Y.1982)............................................................................... 10, 12, 17, 18

*Ranieri v. Adirondack Dev. Group, LLC*, 164 F. Supp. 3d 305 (N.D.N.Y. 2016) ..... 10, 13, 14, 15

*Roy Export, Etc. v. Columbia Broadcasting System*, 503 F. Supp. 1137 (S.D.N.Y. 1980).......... 16

*Slep-Tone Entm't Corp. v. Golf 600 Inc*. 193 F. Supp. 3d 292 (S.D.N.Y. 2016).................... 11, 16

*Smith v. BarnesandNoble.com, LLC*, 143 F. Supp. 3d 115 (S.D.N.Y. 2015).............................. 10

*Spinelli v. National Football League*, 903 F.3d 185 (2d Cir. 2018) ........................................... 16

*Stix Prods., Inc. v. United Merchants & Mfrs., Inc*., 295 F. Supp. 479 (S.D.N.Y. 1968) ............ 10

*Tiffany (NJ) Inc. v. eBay Inc*., 600 F.3d 93 (2d Cir. 2010) .......................................... 9, 10, 14, 19

*Tiffany (NJ) Inc. v. eBay, Inc*., 576 F. Supp. 2d 463 (S.D.N.Y. 2008) ......................................... 11

**Statutes**

15 U.S.C. §1114.............................................................................................................. 6, 9, 18

**Other Authorities**

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:19 (4th ed. 2009) ..................................................................................................................... 9

**Rules and Regulations**

FED. R. CIV. P., RULE 56 ....................................................................................................... 1, 8

N.D.N.Y.L.R. 56.1.................................................................................................................. 1

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Plaintiff Office Create Corporation ("**OC**" or "**Plaintiff**") by and through its undersigned counsel, submits this Memorandum of Law in Support of its Second Motion for Partial Summary Judgment on its claim that Defendants 1st Playable Productions, LLC ("**1st Playable**") and Emilie T. Saulnier ("**Saulnier**") (collectively "**Defendants**") are liable for contributory trademark infringement.

## I.    INTRODUCTION

OC filed the complaint in this action following the successful arbitration against Planet Entertainment, LLC ("**Planet**") and Steve Grossman ("**Grossman**") in which the Arbitral Tribunal found, *inter alia*, the Switch and PS4 Versions[1] of Cooking Mama: Cookstar (referred to hereinafter as "**Switch Version**," "**PS4 Version**" or collectively as the "**Infringing Games**") infringed OC's "Cooking Mama" trademarks.  Defendants are software developers that developed the Infringing Games.

Indeed, the undisputed evidence shows that Defendants contributed to that infringement and, that the infringement would not have been possible without Defendants' contributions.  The undisputed facts overwhelmingly prove that Defendants knew: (i) OC had not approved the games for release; (ii) Nintendo withdrew the Switch Version of the Infringing Games from the Nintendo eShop[2] the same day it was released; (iii) OC had provided public notice that it had terminated Planet's license to use OC's Cooking Mama trademarks and OC had not granted a license for PS4; and (iv) OC brought the arbitration against Planet and Grossman.

---

[1]    "**Switch**" and "**PS4**" refer to the game systems on which the video game operates. Switch is a Nintendo system and PS4 is a Sony system.

[2]    Nintendo's "eShop" is an online site that allows digital copies of the game to be purchased and downloaded directly to the Switch device.

Yet, despite such knowledge, it is undisputed that Defendants, *inter alia*, (a) supplied the Infringing Games to Planet for submission to Nintendo and Sony for release, (b) promoted the sale of the Switch Version of the Infringing Games on 1st Playable's website, and (c) created promotional materials for the Infringing Games, which they supplied to Planet.  In fact, the undisputed evidence shows that Defendant Saulnier cavalierly questioned whether it was worth the time to address OC's rejections of the game builds or simply "prepare for repercussions."  The undisputed evidence shows Defendants knowingly chose to proceed without OC's approval or a license from OC and must now face the repercussions they brazenly anticipated.

Discovery closed on August 1, 2024.[3] Defendants did not produce any evidence that could in any way rebut the undisputed facts and/or preclude summary judgment on OC's contributory Lanham Act claims, despite specific requests for any such evidence.  To the contrary, Defendants produced evidence that further supports and compels a finding of contributory trademark infringement.

Accordingly, OC is entitled to summary judgment on its claims for contributory trademark infringement.

## II.    FACTUAL BACKGROUND

OC is the owner of the entire right, title and interest in U.S. Trademark Registration No. 3773652 for the word mark "Cooking Mama," which was first used in commerce in 2006 and registered in the United States in 2010. (SOMF Nos. 1and 2).[4]

In August 2018, OC and Planet entered into a Licensing Agreement for the development and sale of a Switch version of a Cooking Mama game.  (SOMF No. 5).  The Licensing Agreement

---

[3]    Neither party has produced expert reports.

[4]    All evidentiary cites are to the identified paragraph number of Plaintiff's Statement Of Material Facts Pursuant to Local Rule 56.1 ("**SOMF**")**,** submitted herewith.

2

**did not** include a license to develop a PS4 version of a Cooking Mama game. (SOMF No. 6). Planet had no right to sublicense the Cooking Mama intellectual property. (SOMF No. 7).

OC and Planet agreed that Four Winds, Inc. and its representative, Toshio Fujioka, would act "as an exclusive agent in order to proceed smoothly of this project." (SOMF No. 8). Mr. Fujioka acted as an intermediary to assist with translation of Japanese into English and English into Japanese. (SOMF No. 9).

Defendants admit that they prepared "game builds" of the Switch Version, which it provided to Planet. (SOMF Nos. 10, 11 and 32).  Planet, in turn, submitted the game builds that had been developed by 1st Playable and Ms. Saulnier, to OC for review and approval as required under the Licensing Agreement. (SOMF No. 12).

On December 25, 2019, OC wrote to Grossman, Planet, and Ms. Saulnier to inform them that OC could not approve the current game build. (SOMF No. 13).  The email correspondence produced from Defendants' records show that they received the translation of OC's correspondence that clearly indicated OC had rejected and did not approve the game builds of the Switch Version. (SOMF No. 14).

Defendants supplied Planet with the unapproved game builds of the Switch Version, thereby facilitating and enabling Planet to submit the unapproved Switch Version to Nintendo of America ("**NOA**") on January 6, 2020. (SOMF No.15). When Defendants were informed that Planet successfully uploaded the unapproved game build to NOA, Ms Saulnier stated, "Great!" (SOMF No. 16).

OC was unaware of and did not approve of any submission of Cooking Mama: Cookstar to NOA. (SOMF No. 17). Unaware of the submission of the game to NOA, OC continued to send feedback concerning the previously rejected game build. (SOMF No. 18).

3

On February 18, 2020, Defendant Saulnier in her capacity as CEO of 1st Playable cavalierly questioned whether it was worth the time to address OC's rejections of the game build "or prepare for repercussions." (SOMF No. 19).

On March 16, 2020, Mr. Fujioka forwarded a letter from Mr. Togakushi (OC) to Grossman, Planet, 1st Playable and Ms. Saulnier, in which Mr. Togakushi provided the reasons why OC could not approve the current game build. (SOMF No. 20).

On March 26, 2020, the Switch Version was released on the Nintendo eShop without OC's knowledge or approval. (SOMF No. 21). That same day, Nintendo removed the Cooking Mama: Cookstar game from the Nintendo eShop. (SOMF No. 22). Defendants admit they were aware the game was removed from the eShop. (SOMF No. 23).

On 30 March 2020, OC provided notice to Planet of the immediate termination of the Licensing Agreement. (SOMF No. 24). On April 15, 2020, OC issued the following press release:

> Re: Unauthorized Release of Cooking Mama: Cookstar by Planet Entertainment, LLC
>
> We would like to thank our fans and customers for their support over the years for the Cooking Mama franchise. As many of you know, Planet Entertainment LLC (Headquarters: Connecticut, USA; "Planet") recently released "Cooking Mama: Cookstar" for sale in the U.S., Europe and Australia. This was an unauthorized release in breach of Planet's contract with Office Create.
>
> In August 2018, Office Create licensed Planet to develop the Cooking Mama: Cookstar game for Nintendo Switch™. Unfortunately, the quality of the game builds failed to meet the standards that our customers expect and deserve. Office Create rejected a wide range of deficiencies affecting the overall feel, quality and content of the game. **Yet, despite being contractually obligated to correct the identified deficiencies and resubmit the corrected game for Office Create's approval, Planet proceeded to release Cooking Mama: Cookstar without addressing all of the rejections and without Office Create's approval**.
>
> We have also learned that Planet and/or its European distributor has been promoting an upcoming European release of a PS4™ version of Cooking Mama: Cookstar. **Office Create has not licensed Planet (or any other**

4

> **entity) to create any Cooking Mama games for PS4™. Office Create itself has not been involved in the development of any PS4™ Cooking Mama game**.
>
> **On March 30, 2020 Office Create notified Planet of its immediate termination of the license due to Planet's intentional material breach of the license contract**. Despite such notice, Planet continues to advertise and sell the unauthorized version of Cooking Mama: Cookstar on its website in willful violation of Office Create's rights. To date, Planet has not confirmed the status of the unauthorized PS4™ version.
>
> Office Create is evaluating all legal action against Planet to protect our customers, intellectual property rights and the Cooking Mama series. In the meantime, we thank our customers and loyal Cooking Mama fans for their continued support and sincerely regret any confusion and disappointment that has been caused by Planet's conduct.

(SOMF No. 25).

Defendants were aware of OC's press release as evidenced by Defendant Saulnier's April 15, 2020 email to Planet stating, "[w]ith OC going public with their stance today, is there a planned response from planet?" (SOMF No. 26). Indeed, Ms. Saulnier assisted Planet in drafting Planet's responsive press release. (SOMF No. 28). At that time, Ms. Saulnier once again evidenced her contempt for OC and her complete lack of concern that Defendants were infringing OC's intellectual property rights, suggesting that the responsive press release should include a reference to a specific game feature she felt was "worth mentioning since OC hated it." (SOMF No. 29).

Despite such knowledge, Defendants admit they never contacted OC to confirm whether Planet or Grossman were licensed under OC's IP. (SOMF No. 27). Even so, as detailed below, Defendants continued to support and promote Planet's infringement of OC's Cooking Mama trademark at least until Planet and Grossman were enjoined from further infringement.

Thus, the undisputed evidence shows that as of no later than April 15, 2020, Defendants had actual and constructive notice that the Switch Version of Cooking Mama: Cookstar had been released without OC's approval, that OC had terminated Planet's license, and that OC had not

5

licensed Planet (or any other entity) to create any Cooking Mama games for PS4. (SOMF Nos. 13, 14, 18, 19, 20, 22, 23, 25, 26, 27, 28 and 29).

In April 2021, OC initiated binding international commercial arbitration seated in New York, New York under New York law and administered by the International Chamber of Commerce against Planet and Grossman. (SOMF No. 37). On October 3, 2022, the three-member arbitral tribunal ("**Arbitral Tribunal**") issued a final award in OC's favor. (SOMF No. 38).[5] The Arbitral Tribunal found, *inter alia*, that the Switch and PS4 Versions of Cooking Mama: Cookstar infringed OC's Cooking Mama trademark in violation of 15 U.S.C. §1114. (SOMF No. 40). The Arbitral Tribunal concluded, *inter alia*, the promotion, distribution and sale of the Cooking Mama: Cookstar games constituted infringement of OC's Cooking Mama trademarks. (SOMF No. 41). With respect to the PS4 Version, the Arbitral Tribunal expressly found that "Planet did not have the right to release a PS4 version of the Game." (SOMF No. 42).

OC has never licensed the Cooking Mama trademark (or any Cooking Mama rights) to either Defendant. (SOMF No. 3). Defendants admit that 1st Playable and OC did not enter into any license agreement. (SOMF No. 4). Thus, the only possible rights that Defendants can assert are derivative of Planet's rights under the Licensing Agreement, which rights ceased to exist with the termination of Planet's license. (SOMF No. 59).

Defendants continued to contribute to Planet's infringement. Defendants displayed the Cooking Mama mark on 1st Playable's website and promoted the sale of the Switch Version. (SOMF No. 30). Defendants admit 1st Playable's website included a link to Amazon's website for the Switch Version. (SOMF No. 31). The referenced webpage containing the link to Amazon's

---

[5]    The Arbitral Award was confirmed by the United States District Court for the Southern District of New York, with judgment entered in OC's favor. *Office Create Corp. v Planet Entertainment, et ano*, Civil Action. No. 1:22-cv-08848-ER (S.D.N.Y), Dkt#50 and Dkt#73. (SOMF No. 38).

website is shown below for demonstrative purposes to aid in the Court's understanding of Defendants' admission. (*Id.*).



In addition to the use of the "Cooking Mama" trademark, "Defendants admit that the image set forth in Paragraph 65 [of the Complaint] lists Office Create as a 'PARTNER' and that this image was posted on 1st Playable's website." (SOMF No. 32). The referenced "image set forth in Paragraph 65" of the Complaint is shown below for the Court's ease of reference.



Notably, that same referenced and admitted image shows the link to Amazon's website. (SOMF Nos. 31 and 32).

7

Defendants also facilitated, supported and promoted Planet's infringing conduct by developing and providing animations of Cooking Mama to Planet for the intended purpose of promoting the sale of the Infringing Games. (SOMF No. 36).

Defendants continued to use the Cooking Mama mark and OC's name on 1st Playable's website until the Arbitral Tribunal ordered the destruction of "all copies of all infringing labels, packages, advertisements, software code (in all forms and formats), art files, resources, Games, Products and other articles, including the deletion of all digital files on cloud servers, backup drives, and personal computers under the physical, legal or contractual control of the Respondents or **1st Playable**." (SOMF No. 43).

Defendants admit that 1st Playable developed the PS4 Version. (SOMF No. 33). In February 2021, Defendants supplied the unlicensed PS4 Version for submission to Sony Interactive Entertainment ("**SIE**"), thereby facilitating and enabling the release of the unlicensed PS4 Version. (SOMF No. 34). Defendants admit that the PS4 Version was released in or around March 2021 (SOMF No. 35).

## III.   <u>LEGAL STANDARD</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, judgment may be entered in favor of the moving party if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *see also Goodman v. Albany Transp., Inc*., 103 F. Supp. 2d 112, 114 (N.D.N.Y. 2000). "To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant." *Id*. "Thus, summary judgment is proper where there is 'little or no evidence ... in support of the non-moving party's case.'" *Id*. (quoting *Gallo v. Prudential Residential Servs*., 22 F.3d 1219 (2d Cir.1994)).

## IV.    ARGUMENT

### A.    OC's Valid and Rights Were Directly Infringed

Contributory liability for trademark infringement requires a showing of direct infringement. *See, Tiffany (NJ) Inc. v. eBay Inc*., 600 F.3d 93, 103 (2d Cir. 2010) ("infringing conduct of another" required for contributory infringement).  The Arbitral Tribunal found that Planet directly infringed OC's valid and protectable trademark in violation of 15 U.S.C. §1114 with respect to the Switch and PS4 Versions of Cooking Mama: Cookstar.  (SOMF No. 40).

### B.    Defendants Are Contributorily Liable for the Trademark Infringement

Contributory trademark infringement stems from the tort law notion "that one who directly contributes to another's infringement should be held accountable." *Fonovisa, Inc. v. Cherry Auction, Inc*., 76 F.3d 259 (9th Cir. 1996); *see also Tiffany*, 600 F.3d at 103 (contributory trademark infringement "derives from the common law of torts" for "culpably facilitating the infringing conduct of . . . counterfeiting vendors.").

The Supreme Court explained in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc*., 456 U.S. 844, 854 (1982), that "the core of this doctrine is that a manufacturer or distributor infringes when it 'intentionally induces another to infringe a trademark,' or 'continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement.'" *Tiffany*, 600 F.3d at 104 (quoting *Inwood*, 456 U.S. at 854). "Everyone who knowingly participates in the preparation, distribution and sale of infringing goods or services is potentially liable as a contributory infringer." *Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 180 (N.D.N.Y. 2011) (quoting 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:19 (4th ed. 2009)). "Under this doctrine, a defendant is liable for infringement of plaintiff's registered mark if defendant knowingly 'supplied the ammunition' that allowed the wrongful user to complete the infringement." *Power Test Petroleum Distribs., Inc. v. Manhattan*

9

*& Queens Fuel Corp,* 556 F. Supp. 392, 394 (E.D.N.Y.1982) (quoting *Stix Prods., Inc. v. United Merchants & Mfrs., Inc*., 295 F. Supp. 479, 496 (S.D.N.Y. 1968)).

"A determination of liability for contributory infringement turns on the factual issue of knowledge: Assuming defendant had no control over subsequent entities in the chain of distribution, did it nonetheless have reason to be aware that plaintiff's mark was being infringed?" *Power Test*, 556 F. Supp. at 394; *see also Display Producers, Inc. v. Shulton, Inc*., 525 F. Supp. 631, 633 (S.D.N.Y. 1980) ("[t]he test is whether wrongdoing by the purchaser might well have been anticipated by the defendant."). "Actual knowledge exists where it can be shown by a defendant's conduct or statements that it actually knew of specific instances of direct infringement. Constructive knowledge exists where it can be shown a defendant should have known of the direct infringement." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098, 1106 (N.D. Cal. 2008)(citing *A M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1020 (9th Cir. 2001). "Evidence of actual and constructive knowledge may be found in 'cease-and-desist letters, officer and employee statements, promotional materials, and industry experience.'" *Ranieri v. Adirondack Dev. Group, LLC*, 164 F. Supp. 3d 305, 346 (N.D.N.Y. 2016) (quoting *Smith v. BarnesandNoble.com, LLC*, 143 F. Supp. 3d 115, 124 (S.D.N.Y. 2015)); *see also Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503-04 (6th Cir. 2013)(evidence of actual knowledge found from, *inter alia*, receiving letters stating that infringing products were being sold).

Additionally, a party with "sufficient control over the instrumentality used to infringe" may not "willfully shut its eyes to the infringing conduct" of a third party. *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 249 (S.D.N.Y. 2010). Indeed, "willful blindness is equivalent to actual knowledge for purposes of the Lanham Act." *Tiffany*, 600 F.3d at 110.

10

### 1.    Defendants Supplied Products and Services to a Direct Infringer

The *Inwood* test for contributory trademark infringement applies to the supply of products or services. *Tiffany (NJ) Inc. v. eBay, Inc*., 576 F. Supp. 2d 463, 504 (S.D.N.Y. 2008). Here, the first element of contributory trademark infringement is satisfied, as it is undisputed that Defendants supplied products *and* services to Planet, the direct infringer.

Defendants' ***products*** included the games builds of the Infringing Games that they developed and supplied to Planet for submission to NOA and SIE. (SOMF Nos. 15, 16, 17, 34 and 53).  Defendants also developed and supplied Planet with animations of Cooking Mama for the purpose of promoting the sale of the Infringing Games. (SOMF No. 36).

Defendant also provided a "service" or "venue" in the form of its website, through which it promoted the sale of the Infringing Games. *Slep-Tone Entm't Corp. v. Golf 600 Inc*. 193 F. Supp. 3d 292, 296 (S.D.N.Y. 2016) (quoting *Tiffany*, 576 F. Supp. 2d at 505-06) ("[I]ncluded within the definition of service providers [is] a 'venue[] that provides a service,' such as a forum through which infringement occurs."). Specifically, Defendants promoted the sale of the Switch Version on its website (www.1stplayable.com), including providing a link to purchase the game on Amazon. (SOMF Nos. 30, 31 and 32). Thus, Defendants' website was a venue that provided a forum for Planet to promote the sale of the infringing Cooking Mama: Cookstar game. *Slep-Tone*, 193 F. Supp. 3d at 296.  Defendant Saulnier – the founder, CEO and sole shareholder of Defendant 1st Playable – *per se* had control over what was displayed on 1st Playable's corporate website. (SOMF Nos. 47).  *See Slep-Tone*, 193 F. Supp. 3d at 296 (In the context of service providers, defendant must exercise "sufficient control over the means of the infringing conduct").

Thus, the undisputed evidence proves that Defendants supplied infringing products and services to the direct infringer, thereby satisfying the first element of contributory trademark

11

infringement. *See Dish Network L.L.C. v. Siddiqi*, Case No. 18-CV-4397 (VB), *10-11 (S.D.N.Y. Nov. 6, 2019).

**2.      Defendants Continued to Supply Its Products and Services to Planet, Whom They Knew or Had Reason to Know was Engaging in Trademark Infringement**

The undisputed evidence proves that Defendants "knew or had reason to know" that Planet was infringing the Cooking Mama trademark and yet continued to provide products and services to Planet.  The undisputed evidence proves this element as well. *Power Test*, 556 F. Supp. at 394.

Without Defendants' contribution, direct infringer Planet could not have infringed.  The indisputable evidence shows that Defendants developed the Infringing Games and supplied the unapproved game builds to Planet for their release. (SOMF Nos. 15, 16, 17, 34 and 53).  On December 25, 2019, Mr. Togukushi (OC's President and Representative Director) informed Defendants that OC could not approve the current Cooking Mama: Cookstar game build. (SOMF No. 13).  The evidence produced from Defendants own files proves they received Mr. Togakushi's email informing them that OC could not approve the current Cooking Mama: Cookstar game build. (SOMF No. 14).  Thus, as of that date, Defendants were fully aware that OC did not approve  the game builds. *See Coach*, 717 F.3d at 503-04 (finding evidence of actual knowledge where defendants received letters).

Despite such knowledge, on January 6, 2020, Defendants supplied Planet with the unapproved game build of the Switch Version for submission to NOA. (SOMF No. 15).   Thus, the undisputed evidence proves that Defendants provided the "ammunition" that allowed Planet to release the game and directly infringe OC's rights. *Power Test*, 556 F. Supp. at 395.

This is not a case in which a supplier merely "anticipated" the possible wrongdoing (*see, Display Producers*, 525 F. Supp. at 633), but instead Defendants were fully aware that Planet would submit, and actually did submit, the unapproved game build to NOA.  To the contrary, Ms.

12

Saulnier emailed Planet to provide a link to download the game build for submission to NOA (SOMF No. 15), and when Planet successfully confirmed the successful upload of the unapproved game build to NOA, Ms. Saulnier applauded the infringement by exclaiming, "Great!" (SOMF No. 16).

Unaware of the submission of the unapproved game build to NOA, OC continued to provide grounds of rejection of the prior game build. (SOMF Nos. 17 and 18). Ms. Saulnier's knowledge of the infringement is further evidenced by her cavalier question whether it was worth taking the time to address OC's rejections of the game build or proceed as Defendants and Planet saw fit and "prepare for repercussions." (SOMF No. 19). Obviously, one only fears repercussions when they know they are doing something wrong. *Ranieri*, 164 F. Supp. 3d at 346 (evidence of actual and constructive knowledge may be found in officer and employee statements).

While the foregoing is sufficient to demonstrate that Defendants knew or should have known that they were infringing, Defendants continued their wrongful conduct. On March 16, 2020, Mr. Fujioka forwarded OC's letter to the Defendants, in which OC provided the reasons why it could not approve the current build. (SOFM No. 20). The evidence produced from Defendants' own files proves they received OC's letter informing them that OC could not approve the Cooking Mama: Cookstar game build. (SOFM No. 58). *Coach*, 717 F.3d at 503-04.

Not only were the Defendants repeatedly told by OC that the Switch Version of the Cooking Mama: Cookstar game was not approved for release, but Defendants admit they were aware that Nintendo removed the game from the Nintendo. (SOMF Nos. 21, 22 and 23). Ms.

13

Saulnier has extensive industry experience in game development.[6]  Nintendo's removal of the game provided further constructive knowledge that the infringement problem existed. *See Ranieri*, 164 F. Supp. 3d at 346 (evidence of actual and constructive knowledge may be found in industry experience).

"[W]here a defendant knows or should know of infringement, whether that defendant may be liable for contributory infringement turns on what the defendant does next." *Car-Freshner Corp. v. Meta Platforms, Inc.*, 5:22-CV-1305 (MAD/ML), at *43 (N.D.N.Y. Nov. 7, 2023)(quoting *Omega SA v. 375 Canal, LLC,* 984 F.3d 244, 255 (2d Cir. 2021).  Given the facts that OC had repeatedly rejected game builds, stated it did not approve the release of the game, and Nintendo had removed the game from its eShop, Defendants knew or should have known that Planet was engaging in trademark infringement.  But even if, *arguendo*, there was any doubt in their mind, Defendants could have and should have simply asked OC if it was okay to proceed. Defendants, however, admit that they ***never contacted OC to confirm whether Planet or Grossman were licensed under OC's IP***. (SOMF No. 27). Instead, Defendants opted to stick their heads in the sand, proceed without OC's approval and "prepare for repercussions."  *See*, *Tiffany*, 600 F.3d at 110 ("willful blindness is equivalent to actual knowledge for purposes of the Lanham Act."). Defendants' actions compel a finding of liability of contributory trademark infringement. *Omega,* 984 F.3d at 255.

---

[6]    Defendant Saulnier has been creating games as part of the gaming industry for more than 22 years and is the founder and CEO of Defendant 1st Playable. (SOMF No. 54).  Prior to founding 1st Playable in 2005, she was Vice President of Product Development for Vicarious Visions, until its successful acquisition by gaming company Activision. (SOMF No. 55).  In addition, Defendant Saulnier previously held the position of Chair of the International Game Development Association in 2012 and served on its Board from 2007-2012. (SOMF No. 56).  She has overseen and led the design and development of over 200 games, working with the top creators at Pixar, Cartoon Network, Nickelodeon, and similarly prestigious companies. (SOMF No. 57).

Even assuming *arguendo* that Defendants could somehow have been unaware of their infringing conduct, any doubt was most assuredly removed on April 15, 2020, when OC issued a press release stating, *inter alia*, that the Switch Version had been released without OC's approval, **that OC had terminated Planet's license**, and that **OC had not licensed Planet (or any other entity) to create any Cooking Mama games for PS4**. (SOMF No. 25). *Ranieri*, 164 F. Supp. 3d at 346 (evidence of actual and constructive knowledge may be found in notices to cease and desist). Documents produced from Defendants' own files prove they were aware of OC's press release—that same day, Ms. Saulnier emailed Planet stating, "[w]ith OC going public with their stance today, is there a planned response from planet?" (SOMF No. 26). *See Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098, 1106 (N.D. Cal. 2008) (actual knowledge exists where it can be shown by a defendant's statements that it actually knew of specific instances of direct infringement); *see also Ranieri*, 164 F. Supp. 3d at 346 (evidence of actual and constructive knowledge may be found in officer and employee statements).

Thus, the undisputed evidence proves that as of no later than April 15, 2020, Defendants had actual notice that the Switch Version had been released without OC's approval, that OC had terminated Planet's license, and that OC had not licensed Planet (or any other entity) to create any Cooking Mama games for PS4. It is important to recognize that Defendants admit that 1st Playable and OC did not enter into a license agreement. (SOMF No. 4). Thus, any "rights" that 1st Playable could possibly have with respect to the use of OC's trademarks was derivative of Planet's rights. It is black letter law that a licensee cannot convey rights greater than those it has received:

> It may seem unfair to hold a sublicensee liable for copyright infringement for using a work for which the sublicensee thought it had received a valid license. But it is without question that the sublicensor "may not convey more than he owns," [] and if a sublicensor has no right to issue a particular license, the sublicensee cannot acquire rights in copyrighted works simply because the sublicensor did so anyway.

15

*Spinelli v. National Football League*, 903 F.3d 185, 203 (2d Cir. 2018) (citing *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007); *see also Roy Export, Etc. v. Columbia Broadcasting System*, 503 F. Supp. 1137, 1153 (S.D.N.Y. 1980); *Gilliam v. Am. Broad. Companies, Inc.*, 538 F.2d 14, 20-21 (2d Cir. 1976). Yet, despite having actual knowledge of OC's press release in which OC stated, *inter alia*, that it had terminated OC's license to OC's Cooking Mama intellectual property (SOMF Nos. 12, 13 and 14), Defendants never contacted OC to see if it was okay to continue. (SOMF Nos. 27).

Rather, even the actual notice of infringement did not give Defendants pause. To the contrary, Ms. Saulnier proceeded to assist Planet in drafting a response to OC's press release and promote the sale of the infringing game. (SOMF No. 28). Indeed, demonstrating her contempt for OC's rights, Defendant Saulnier suggested that Planet include reference to a specific feature of the unapproved Cooking Mama: Cookstar game that she felt was "worth mentioning since OC hated it". (SOMF No. 29).

Furthermore, Defendants proceeded to advertise and market the Switch Version on its website (www.1stplayable.com), including providing a link to purchase the Cooking Mama: Cookstar game on Amazon. (SOMF Nos. 30, 31 and 32), thereby providing a forum for Planet to promote and sell the infringing Cooking Mama: Cookstar game. *See Slep-Tone*, 193 F. Supp. 3d at 296; *see also Grant Airmass Corp. v. Gaymar Industries*, 645 F. Supp. 1507, 1512 (S.D.N.Y. 1986) (finding defendant's assistance in sales efforts by promoting products sufficiently contributed to the infringing conduct to bring defendant within the purview of the Lanham Act).

Defendants also had actual knowledge that OC had not licensed any entity to create any Cooking Mama games for PS4 – OC's press release explicitly stated that OC "has not licensed Planet (or any other entity) to create any Cooking mama games for PS4." (SOMF Nos. 25; *see*

16

*also*, SOMF Nos. 26, 27 and 28). Defendants admit that 1st Playable developed the PS4 Version. (SOMF No. 68). The evidence from their own files prove that Defendants supplied the game build for the unlicensed PS4 Version game, thereby facilitating and enabling Planet to release the unlicensed PS4 Version. (SOMF No. 34). *Power Test*, 556 F. Supp. at 395. Defendants did so in February **2021** – *i.e.*, ten (10) months after OC's April 15, **2020** press release. (SOMF No. 34). The failure to take appropriate remedial actions for ten months despite actual knowledge of the infringement of OC's trademark is sufficient to support a finding that the Defendants were willfully blind. *Coach, Inc. v. Farmers Mkt. & Auction*, 881 F. Supp. 2d 695, 701 (D. Md. 2012)(holding defendant's failure "to take any remedial measures for a half-year period despite the violations' continuance" supported a finding that defendants were willfully blind).

Defendants' contribution to Planet's infringement continued even after the OC initiated the arbitration against Planet and Grossman. (SOMF No. 44). Defendant Saulnier acted in concert with Planet by (i) preparing a lengthy and detailed witness statement, (ii) assisting in the preparation of Grossman's witness statement, (iii) participating in trial strategy conferences, (iv) testifying in support of Planet's and Grossman's failed defense at the Final Hearing in the Arbitration, and (v) assisting in preparing responses to the Tribunal's post-Hearing questions. (SOMF No. 44). Notably, Saulnier did not have her own counsel—her witness statement was prepared with Planet's counsel, Pryor Cashman LLP, who also counseled, prepared and called her to testify as a non-hostile witness in support of Planet's and Grossman's defense at the Final Hearing in the Arbitration. (SOMF No. 45).

Yet, Defendants continued to facilitate, support and promote Planet's infringing conduct by developing and providing animations of Cooking Mama to Planet for the intended purpose of

17

promoting the infringing Cooking Mama: Cookstar games. (SOMF No. 36). *Grant*, 645 F. Supp. at 1512.

The Arbitral Tribunal found, *inter alia*, that the Switch and PS4 versions of Cooking Mama: Cookstar infringed OC's Cooking Mama trademark in violation of 15 U.S.C. §1114. (SOMF No. 40). The Arbitral Tribunal concluded, *inter alia*, the promotion, distribution and sale of the Cooking Mama: Cookstar games constituted infringement of OC's Cooking Mama trademarks. (SOMF No. 41). The Arbitral Tribunal expressly found that "Planet did not have the right to release a PS4 version of the Game." (SOMF No. 42). The undisputed evidence presented herein proves that Defendants contributed to that infringement. Indeed, Defendants "knowingly 'supplied the ammunition' that allowed the wrongful user to complete the infringement." *Power Test,* 556 F. Supp. at 394.

Accordingly, the undisputed evidence proves the second element of OC's claim for contributory trademark infringement. *Dish Network*, Case No. 18-CV-4397 (VB) at *11-12.

### 3.      Defendants Are Contributorily Liable for Planet's Infringement

The Arbitral Tribunal already found that Planet had infringed OC's trademark in violation of 15 U.S.C. §1114 with respect to the Switch and PS4 Versions of Cooking Mama: Cookstar. (SOMF Nos. 46; *see also,* SOMF Nos. 40, 41 and 42). The Arbitral Award has been confirmed and judgment entered for OC. (SOMF No. 39).

OC has proved that Defendants continued to supply products and services to Planet knowing that the recipient was using the product to engage in trademark infringement. *Inwood*, 456 U.S. at 854-55; *Car-Freshner*, 822 F. Supp. at 180 (N.D.N.Y. 2011); *Power Test,* 556 F. Supp. at 394 (E.D.N.Y.1982)("Under this doctrine, a defendant is liable for infringement of plaintiff's registered mark if defendant knowingly 'supplied the ammunition' that allowed the wrongful user to complete the infringement.").

18

Thus, OC is entitled to summary judgment that Defendants are liable for contributory infringement for their knowing contributions to Planet's infringement of OC's Cooking Mama trademark with respect to the Switch and PS4 Versions of Cooking Mama: Cookstar.

Contributory trademark infringement derives from the common law of torts. *See, e.g., Tiffany*, 600 F.3d at 103 (contributory trademark infringement "derives from the common law of torts" for "culpably facilitating the infringing conduct of . . . counterfeiting vendors."); *Fonovisa,* 76 F.3d at 264 (contributory trademark infringement stems from the tort law notion "that one who directly contributes to another's infringement should be held accountable."). Contributory trademark infringers are joint and severally liable for the direct trademark infringement. *Louis Vuitton Malletier, S.A. v. Akanoc Solutions*, 658 F.3d 936, 947 (9th Cir. 2011).

Accordingly, OC is entitled to summary judgment that Defendants are jointly and severally liable for Planet's infringement and the damages awarded therefore.

## C.    Defendant Saulnier's Personal Liability

This Court has found that "[u]nder the Lanham Act, 'personal liability for trademark infringement and unfair competition is established if the officer is a moving, active conscious force behind [the corporation's] infringement.'" *Pinder v. S. DiCarlo, Inc*., Case No. 1:18-cv-00296 (BKS/ATB) 2020 WL 437000, *9 (Jan. 28, 2020 N.D.N.Y) (quoting *Mayes v. Summit Entm't Corp.*, 287 F. Supp. 3d 200, 211–12 (E.D.N.Y. 2018)). An officer is considered "a moving, active conscious force" when they are "either the sole shareholder and employee, and therefore must have approved of the infringing act, or a direct participant in the infringing activity." *Id*.; *see also Innovation Ventures, LLC v. Ultimate One Distributing Corp*., 176 F.Supp.3d 137, 155 (2016).

The undisputed evidence proves that both standards are met in this case.

(a)    Defendant Saulnier is the founder, CEO, and sole shareholder of 1st Playable (SOMF No. 47);

19

(b)   Defendant Saulnier has been employed at 1st Playable since founding it in 2005 (SOMF No. 48);

(c)   Defendant Saulnier has a role in determining the policies and practices of 1st Playable, including the projects that 1st Playable pursues (SOMF No. 49);

(d)   Defendant Saulnier approved 1st Playable entering into a contract to develop Cooking Mama: Cookstar (SOMF No. 50);

(e)   Defendant Saulnier was involved in and provided general oversight over the development of Cooking Mama: Cookstar (SOMF No. 51);

(f)   Defendant Saulnier is identified as the "Production Lead" in the credits of the Switch Version and the PS4 Version (SOMF No. 52); and

(g)   Defendant Saulnier personally supplied the game builds for the Switch Version and the PS4 Version to Planet for their release (SOMF No. 53).

Accordingly, the undisputed facts compel a finding as a matter of law that Defendant Saulnier is personally liable, jointly and severally, for contributory trademark infringement.  There being no question of material fact, OC is entitled to summary judgment on this claim.

## V.    **CONCLUSION**

For the foregoing reasons, OC respectfully requests that the Court grant OC's second motion for partial summary judgment and find Defendants liable for contributory trademark infringement.

DATED: August 16, 2024

*/s/ Marc R. Labgold*
Marc R. Labgold, Ph.D.
D.C. Bar No. 474969 (*pro hac vice*)
mlabgold@labgoldlaw.com
Patrick J. Hoeffner
New York Bar No. 2801462
NDNY Bar Roll # 704054
phoeffner@labgoldlaw.com
Megan C. Labgold

20

Florida Bar No. 1018612 (*pro hac vice*)
megan@labgoldlaw.com
LABGOLD LAW
1900 Reston Metro Plaza
Suite 600
Reston, VA 20190
Tel: (703) 901-8860
Fax: (877) 401-8855

*Counsel for Plantiff Office Create Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2024, I electronically filed the foregoing document with the Clerk of the Court using ECF, which will serve electronic notification of such filing to all counsel of record.

*/s/  Marc R. Labgold*

21