UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

OFFICE CREATE CORPORATION,

                        Plaintiff,

         v.

1st PLAYABLE PRODUCTIONS, LLC,

and

EMILIE T. ("TOBI") SAULNIER,

                     Defendants.

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1**

Case No. 1:23-cv-00091 (TJM/DJS)

Pursuant to Local Civil Rule 56.1, Plaintiff Office Create Corporation ("**OC**"), by and through its undersigned counsel, hereby submits the following Statement of Material Facts of which Plaintiff contends there is no genuine issue, in support of its Second Motion for Partial Summary Judgment and Memorandum of Law in support thereof.  **Exhibits A – K**, submitted herewith and cited herein, are true and accurate copies of documents produced by Defendants in this litigation in response to OC's requests pursuant to FED. R. CIV. P., R34.[1]  *See, Am. Honda Fin. Corp. v. Route 57 Dev., LLC*, 7:13-CV-0260 (GTS/ATB), at *5 n.2 (N.D.N.Y. Mar. 1, 2016).

1.      OC is the owner of U.S. Trademark Registration No. 3773652 for the word mark "Cooking Mama" which was first used in commerce in 2006 and registered in the United States in 2010. (Declaration of Noriyasu Togakushi ("**Togakushi Decl.**"), ¶3).

2.      The public records of the United States Patent and Trademark Office evidence OC is the assignee of record for Reg. No. 3773652 for the word mark "Cooking Mama".

---

[1]    Highlights have been added to some exhibits to aid the Court in navigation of the exhibits.

https://tsdr.uspto.gov/#caseNumber=3773652&caseSearchType=US_APPLICATION&caseType=DEFA ULT&searchType=statusSearch.

3.      OC has never licensed the Cooking Mama trademark (or any Cooking Mama rights) to either Defendant. (Togakushi Declaration, ¶4).

4.      Defendants admit that 1st Playable and OC did not enter into any license agreement. (Dkt#1, ¶100; Dkt#27, ¶100).

5.      In August 2018, OC and Planet Entertainment, LLC ("**Planet**") entered into a Licensing Agreement for the development and sale of a Switch version of a Cooking Mama game. (Togakushi Decl., 5; Dkt#1-1, ¶¶7 and 34).

6.      The Licensing Agreement did not include a license to develop a PS4 version of a Cooking Mama game. (Dkt#1-1, ¶108).

7.      Planet had no right to sublicense the Cooking Mama intellectual property. (Dkt#1-1, ¶167).

8.      OC and Planet agreed that Four Winds, Inc. and its representative, Mr. Toshio Fujioka, would act "as an exclusive agent in order to proceed smoothly of this project." (Togakushi Decl., ¶5).

9.      Mr. Fujioka acted as an intermediary in correspondence between OC, Planet, Steve Grossman ("**Grossman**") and Defendants. (Togakushi Decl., ¶5).

10.     Defendants developed the Cooking Mama Cookstar games on the Nintendo Switch ("**Switch**") and PlayStation 4 ("**PS4**") platforms. (Dkt#1, ¶¶ 33, 34, 68; Dkt#27, ¶¶33, 34, 68).

11.     Defendants admit that during the development of the game, Defendants prepared "game builds" of the Switch version of the Cooking Mama: Cookstar game, which it provided to Planet. (Dkt#27, ¶47).

2

12.     Planet submitted the game builds to OC for review and approval as required under the Licensing Agreement. (Togakushi Decl., ¶6).

13.     On December 25, 2019, Mr. Togukushi (OC) wrote to Grossman, Planet, and Ms. Saulnier to inform them that OC could not approve the current Cooking Mama: Cookstar game build.  (Togakushi Decl., ¶7).

14.     The email correspondence produced from Defendants' records show that Defendants received the translation of OC's December 25, 2019, correspondence that clearly indicated OC had rejected and did not approve the game builds of the Switch Version. (Ex. C).

15.     Defendants supplied the unapproved game builds of the Switch Version of Cooking Mama: Cookstar to Planet for submission to Nintendo of America ("**NOA**") on January 6, 2020. (Ex. A at email dated January 6, 2020 (3:42PM)).

16.     When Defendants were informed that Planet successfully uploaded the unapproved game build to NOA, Ms. Saulnier stated, "Great!" (Ex. A, email dated January 6, 2020 (4:13PM)).

17.     OC was unaware of and did not approve any submission of Cooking Mama: Cookstar to NOA. (Togakushi Decl., ¶8).

18.     OC continued to send feedback concerning the previously rejected game build. (Togakushi Decl., ¶7).

19.     On February 18, 2020, Defendant Saulnier in her capacity as CEO of 1st Playable questioned whether it was worth the time to address OC's rejections of the game build "or prepare for repercussions."  (Dkt#1, ¶50; Dkt#27, ¶50).

20.     On March 16, 2020, Mr. Fujioka forwarded to Grossman, Planet and Defendants, a letter from OC in which OC provided the reasons why it could not approve the current build. (Togakushi Decl., ¶ 9; Ex. D at 1stPlayable1461 (March 16, 2020 email (10:33PM)); Ex. E).

21.    On March 26, 2020, the Switch Version was released on the Nintendo eShop without OC's knowledge or approval. (Togakushi Decl., ¶10; Dkt#27, ¶51).

22.    That same day, Nintendo removed the Cooking Mama: Cookstar game from the Nintendo eShop. (*Id*).

23.    Defendants admit they were aware the game was removed from the eShop. (Dkt#27, ¶52).

24.    On 30 March 2020, OC provided notice to Planet of the immediate termination of the Licensing Agreement. (Togakushi Decl., ¶11).

25.    On April 15, 2020, OC issued the following press release:

Re: Unauthorized Release of Cooking Mama: Cookstar by Planet Entertainment, LLC

We would like to thank our fans and customers for their support over the years for the Cooking Mama franchise. As many of you know, Planet Entertainment LLC (Headquarters: Connecticut, USA; "Planet") recently released "Cooking Mama: Cookstar" for sale in the U.S., Europe and Australia. This was an unauthorized release in breach of Planet's contract with Office Create.

In August 2018, Office Create licensed Planet to develop the Cooking Mama: Cookstar game for Nintendo Switch™. Unfortunately, the quality of the game builds failed to meet the standards that our customers expect and deserve. Office Create rejected a wide range of deficiencies affecting the overall feel, quality and content of the game. **Yet, despite being contractually obligated to correct the identified deficiencies and resubmit the corrected game for Office Create's approval, Planet proceeded to release Cooking Mama: Cookstar without addressing all of the rejections and without Office Create's approval**.

We have also learned that Planet and/or its European distributor has been promoting an upcoming European release of a PS4™ version of Cooking Mama: Cookstar. **Office Create has not licensed Planet (or any other entity) to create any Cooking Mama games for PS4™. Office Create itself has not been involved in the development of any PS4™ Cooking Mama game**.

**On March 30, 2020 Office Create notified Planet of its immediate termination of the license due to Planet's intentional material breach of**

**the license contract.** Despite such notice, Planet continues to advertise and sell the unauthorized version of Cooking Mama: Cookstar on its website in willful violation of Office Create's rights. To date, Planet has not confirmed the status of the unauthorized PS4™ version.

Office Create is evaluating all legal action against Planet to protect our customers, intellectual property rights and the Cooking Mama series. In the meantime, we thank our customers and loyal Cooking Mama fans for their continued support and sincerely regret any confusion and disappointment that has been caused by Planet's conduct.

(Togakushi Decl., ¶12 (emphasis added); Dkt#27, ¶57).

26.    Defendants were aware of OC's press release as evidenced by Defendant Saulnier's April 15, 2020 email to Planet stating, "With OC going public with their stance today, is there a planned response from planet?" (Ex. F at email dated April 15, 2020 (10:54 AM)).

27.    Defendants admit that they never contacted OC to confirm whether Planet or Grossman were licensed under OC's IP. (Dkt#1, ¶40; Dkt#27, ¶40).

28.    Defendant Saulnier assisted Planet in drafting Planet's responsive press release. (Ex. G at emails dated April 15, 2020 (1:53PM & 1:58PM)).

29.    Defendant Saulnier suggested, *inter alia*, including reference to a specific feature of the unapproved Cooking Mama: Cookstar game that she felt was "worth mentioning since OC hated it." (Ex. G at email dated April 15, 2020 (1:53PM).

30.    Defendants displayed the Cooking Mama mark on 1st Playable's website and promoted the sale of the Switch Version. (Dkt#1, ¶64 (see image); Dkt#27, ¶64).

31.    Defendants admit 1st Playable's website included a link to Amazon's website for the Switch version of the Cooking Mama: Cookstar game. (Dkt#1, ¶¶64 and 143; Dkt#27, ¶¶64 and 143). The image from Paragraph 64 of the Complaint, evidencing the admitted Amazon link, is shown below. (Dkt#1, ¶64)

5



32.     In addition to use of the "Cooking Mama" trademark, "Defendants admit that the image set forth in Paragraph 65 [of the Complaint] lists Office Create as a 'PARTNER' and that this image was posted on 1st Playable's website." (Dkt#27, ¶65; Dkt#1, ¶65).   The referenced "image" from Paragraph 65 of the Complaint is shown below.



33.     Defendants admit that 1st Playable developed a PS4 version of Cooking Mama: Cookstar. (Dkt#27, ¶68).

34.     In February 2021, Defendants supplied the unlicensed PS4 Version of Cooking Mama: Cookstar, thereby facilitating and enabling Planet's release of the unlicensed PS4 Version

of Cooking Mama: Cookstar to Sony Interactive Entertainment.  ("**SONY**" or "**SIE**"). (Ex. B at emails dated February 3, 2021 (4:19PM and 4:44PM)).).

35.    Defendants admit that the PS4 version of Cooking Mama: Cookstar was released in or around March 2021. (Dkt#27, ¶68).

36.    Defendants facilitated, supported and promoted Planet's infringing conduct by developing and providing animations of Cooking Mama to Planet for the intended purpose of promoting the infringing Cooking Mama: Cookstar games. (*See, e.g*., Ex. H).

37.    In April 2021, OC initiated binding international commercial arbitration seated in New York, New York under New York law and administered by the International Chamber of Commerce against Planet and Grossman. (*See, e.g*., Dkt#1-1, ¶¶9 and 12).

38.    On October 3, 2022, the three-member arbitral tribunal ("**Arbitral Tribunal**") issued a final award in OC's favor. (Dkt#1-1).

39.    The Arbitral Award was confirmed by the United States District Court for the Southern District of New York, with judgment entered in OC's favor. *Office Create Corp. v Planet Entertainment, et ano*, Civil Action. No. 1:22-cv-08848-ER (S.D.N.Y), Dkt#50 and Dkt#73.

40.    The Arbitral Tribunal found, *inter alia*, that the Switch and PS4 versions of Cooking Mama: Cookstar infringed OC's Cooking Mama trademark in violation of 15 U.S.C. §1114. (*See, e.g*., Dkt#1-1, ¶¶126 and 184(k) –(n)).

41.    The Arbitral Tribunal concluded, *inter alia*, the promotion, distribution and sale of the Cooking Mama: Cookstar games constituted infringement of OC's Cooking Mama trademarks. (Dkt#1-1 at ¶126).

42.    The Arbitral Tribunal expressly found that "Planet did not have the right to release a PS4 version of the Game." (Dkt#1-1 at ¶¶105-113, 126).

43.     Defendants continued to use the Cooking Mama mark, the Mama character, and OC's name on 1st Playable's website until the Arbitral Tribunal ordered the destruction of "all copies of all infringing labels, packages, advertisements, software code (in all forms and formats), art files, resources, Games, Products and other articles, including the deletion of all digital files on cloud servers, backup drives, and personal computers under the physical, legal or contractual control of the Respondents or **1st Playable**." (Dkt#1-1, ¶196(h); emphasis added).

44.     Defendants' contribution to Planet's infringement continued after the OC initiated the arbitration against Planet and Grossman. Defendant Saulnier acted in concert with Planet and (i) provided a detailed witness statement, (ii) assisted in the preparation of Planet's employee Joe McHale's witness statement, (iii) voluntarily testified in support of Planet's and Grossman's failed defense at the Final Hearing in the Arbitration, and (iv) assisted in preparing Planet/Grossman's responses to the Tribunal's post-Hearing questions. (*See, e.g.,* Dkt#27, ¶75; Exs. I and J).

45.     Defendant Saulnier did not have her own counsel with respect to her participation in the Arbitration – her witness statement was prepared with Planet's counsel, Pryor Cashman LLP, who also counseled, prepared and called her to testify as a non-hostile witness in support of Planet's and Grossman's defense at the Final Hearing in the Arbitration. (Dkt#27, ¶75).

46.     The Arbitral Tribunal found that Planet had infringed OC's trademark in violation of 15 U.S.C. §1114 with respect to the Switch and PS4 Versions of Cooking Mama: Cookstar. (*See, e.g.,* Dkt#1-1, ¶¶122-126, 140-141 and 184.j.)

47.     Defendant Saulnier is the founder, CEO and sole shareholder of 1st Playable. (Dkt#1, ¶29; Dkt#27, ¶29).

48.     Defendant Saulnier has been employed at 1st Playable since founding it in 2005. (Ex. K).

49. Defendant Saulnier has a role in determining the policies and practices of 1st Playable, including the projects that 1st Playable pursues. (Dkt#1, ¶31; Dkt#27, ¶31).

50. Defendant Saulnier approved 1st Playable entering into a contract to develop Cooking Mama: Cookstar (Dkt#1, ¶33; Dkt#27, ¶33).

51. Defendant Saulnier was involved in and provided general oversight over the development of Cooking Mama: Cookstar (Dkt#1, ¶34, 46, 47 and 63; Dkt#27, ¶¶ 34, 46, 47 and 63).

52. Defendant Saulnier is identified as the "Production Lead" in the credits of the Switch Version and the PS4 Version (Dkt#1, ¶¶59 and 70; Dkt#27, ¶¶ 59 and 70).

53. Defendant Saulnier personally supplied the game builds for the Switch Version and the PS4 Version to Planet for their release. (Exs. A and B).

54. Defendant Saulnier has been creating games as part of the gaming industry for more than 22 years and is the founder and CEO of Defendant 1st Playable. (Ex. K).

55. Prior to founding 1st Playable in 2005, Defendant Saulnier was Vice President of Product Development for Vicarious Visions, until its successful acquisition by gaming company Activision. (Ex. K).

56. Defendant Saulnier previously held the position of Chair of the International Game Development Association in 2012 and served on its Board from 2007-2012. (Ex. K).

57. Defendant Saulnier has overseen and led the design and development of over 200 games, working with the top creators at Pixar, Cartoon Network, Nickelodeon, and similarly prestigious companies. (Ex. K).

58.    The email correspondence produced from Defendants' records show that Defendants received the translation of OC's March 16, 2020, correspondence that clearly indicated OC had rejected and did not approve the game builds of the Switch Version. (Exs. D and E).

59.    The Arbitral Tribunal found the Licensing Agreement was validly terminated by OC as of April 29, 2020.  (Dkt#1-1, ¶196(b)).

DATED: August 16, 2024

*/s/ Marc R. Labgold*
Marc R. Labgold, Ph.D.
D.C. Bar No. 474969 (*pro hac vice*)
mlabgold@labgoldlaw.com
Patrick J. Hoeffner
New York Bar No. 2801462
NDNY Bar Roll # 704054
phoeffner@labgoldlaw.com
Megan C. Labgold
Florida Bar No. 1018612 (*pro hac vice*)
megan@labgoldlaw.com
LABGOLD LAW
1900 Reston Metro Plaza
Suite 600
Reston, VA 20190
Tel: (703) 901-8860
Fax: (877) 401-8855

*Counsel for Plantiff Office Create Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2024, I electronically filed the foregoing document with the Clerk of the Court using ECF, which will serve electronic notification of such filing to all counsel of record.

*/s/  Marc R. Labgold*

10